Internal Revenue Service, Mr. Bouchard. Good morning, Your Honors. May it please the Court, David Bouchard on behalf of Appellant Karen Slaughter. At the tax court followed IRS's repeated binding concessions that Ms. Slaughter and Mr. Bouchard were not able to comply with. If Ms. Slaughter's only trade or business in 2010 and 2011 was writing, then it would have answered the correct question. How much of Ms. Slaughter's earnings in 2010 and 2011 were derived from her trade or business of writing? That was the correct question because unlike income tax, which Ms. Slaughter already paid the IRS on her royalties from the tax years at issue, self-employment tax only applies to Ms. Slaughter's earnings tied to the quantity or quality of her physical labor of writing. But nearly four years after trial and nearly four years after the IRS's repeated formal concessions, the tax court issued its order contradicting the IRS's formal concessions. Mr. Bouchard, let me let me interrupt you for a second. So to me, at least the first impression I had about your case was that you were making some. Pretty substantial arguments, but there's one factual part about the record that I can't wrap my head around. So you say that Ms. Slaughter's trade and business was writing and only writing. And yet for the years in question, she took deductions for things that were unconnected to her writing. So she deducted, for example, the rent that she paid for an apartment in New York where she wasn't writing. And she took other deductions that weren't tied to her weeks of writing in Georgia each year. So if that's what she's doing and she's engaged in the trade and business of quote unquote writing, how can the writing not engage, not include promotional activities to further the writing? Your Honor, I have three responses to that. First, as outlined in our briefs, the trial record shows that the only evidence introduced as to the reasons for those business deductions that Your Honor is referencing is that they were related to Ms. Slaughter's writing, including, for example, Your Honor, driving to the cabin in Georgia where she writes or meeting with scriptwriters in New York City in her apartment. How long did she live in New York City? She also, Your Honor, she had the New York City apartment throughout the year. So she's charged, so she deducted the entire rent for the entire year? Correct, Your Honor. And you've got a problem convincing me. Well, Your Honor, let me make two more points there that I think are especially relevant. First, under Christian legal, the Supreme Court's precedent in 2010, a binding factual agreement between the parties is binding. I don't disagree with you, but the question is not whether, to me at least, I don't speak for my two colleagues, but for me, I don't have any doubt that the stipulation was a binding factual agreement. But the question is not whether, again, for me, is not whether or not the stipulation was binding, but what the stipulation means. Your Honor, if I can be heard on that point. Of course. I want to just underscore in response to Your Honor's prior question that under Christian legal, even if there were evidence that contradicted the parties' binding formal concession, which, again, we don't believe there is, the record shows that it was primarily related to writing, but even if there were such contradictory evidence and the business deductions were not consistent with her position on appeal, the binding concessions are binding regardless of such contradictory evidence, which, again, we don't believe there is any. But there's an additional point I want to make there, and that is that Treasury Regulation 1.162-1A provides that a taxpayer is entitled to deduct trade or business expenses related to their trade or business. If that seems like a pretty broad definition, that's my point. That is not a mirror image of 1402A, which provides that only income derived from a trade or business is subject to self-employment tax. So the point I'm making, Your Honors, is that they are not mirror images of each other. You're allowed to deduct more under the Treasury Regulation than you are subject to self-employment tax for under the quantity or quality of labor test. Let me ask you to address something regarding the stipulation. So the government argues that if we were to read the stipulation the way you read it, then there would have basically been no reason to even have a hearing in front of the tax court. It would have just been stipulated away. What do you say about that? Your Honor, that's a wrong and misguided position. The IRS's position throughout the case, their theory of the case, if you will, was that derived from under 26 U.S.C. 1402A means but for. They thought missed slaughter was only in the trade or business of writing. And but for her being in that trade or business, she would not have received these publishing contracts and the income they're under. But the tax court rejected the but for test in Doc 64, page 19, and found that the right test is the quantity or quality of Miss Slaughter's physical labor. That's what derived from means, according to the tax court. And as your honors know, the IRS didn't appeal that finding. That's not before the court right now. That is the binding meaning of derived from. And so you're honored, Judge Brasher, to fully answer the question. All that IRS was arguing before the tax court was that but for her being in the trade or business of writing, she wouldn't have received the income under these publishing contracts. And I want to draw the court's attention specifically. While there are multiple concessions, which were all laid out briefing, I want to draw the court's attention specifically to the IRS's post trial brief, which is Doc 50 at page 32. This is especially important for the court's consideration because this was ultimate finding a fact. One. In other words, your honors, based on all the evidence introduced a trial, based on all of the testimony, all of the exhibits, the IRS. In a brief, signed by two senior IRS attorneys rights. Ultimate finding a fact one, all of this lotters income from her publishing contracts was derived from her trade or business of writing. That's unequivocal. There's no caveat, no qualification. As this court. But Mr Bouchard you're assuming. I'm sorry, just cards go right ahead. That's all right. Mr Bouchard I, I took the, the trade of writing the court's efforts was to determine the scope of what that means and you're relying so heavily on the stipulation slash agreement very little on the merits of what the actual dispute is if you didn't have that and that's what I'm curious about it seems to me kind of obvious. The trade of writing is actually the trade of selling books you've written. There is no point in just sitting in your cabin and writing. You don't have a trade if nobody buys the books, her whole purpose and she spent a great deal of her time was promoting this going to New York going to shows, because if nobody buys her book she doesn't make $1. Do you disagree. You seem to be relying only on a stipulation if you didn't have this stipulation. How would you dispute an argument that the trade of writing is essentially the trade of selling books one has written. Thank you, Your Honor, again, derived from these tied to the physical labor of mishap. And as this court has held in Stephens, the counterpart to seek out which is self employment is fika, which is the payroll tax that employers apply to the services provided by their employees, the wages that the employee receives. And so the record here is that Miss slaughters labor was writing, and that she had her labor talking to publishers and her labor was going to shows in New York and our labor was doing lots of things because she doesn't make any money, or makes much less money she doesn't sell books. Well, Your Honor, most of the money that she received as the unrebutted record shows from this need a top lead an expert in publishing, who's negotiated thousands of author contracts, including with George RR Martin john Grisham Danielle steel. She said publishers primarily not for the author's labor of writing, but for the authors intangible assets, like the author's name or likeness now obviously Miss slaughters name and likeness is not physical labor. And that's why the record. I guess I'm with, I have the same concern judge Carnes does because I just feel like that slicing things a little bit thin I mean let me give you this hypothetical. Let's say I'm a really fancy lawyer, and I've developed a reputation of being a really great lawyer. And, you know, my reputation precedes me it's incredibly important. And so clients are willing to pay $3,000 an hour for my time because I'm incredibly well known and well respected. And when I show up, you know, people pay attention to me and listen to me. How would you differentiate the labor that I'm providing as a lawyer, versus what the clients are paying because of my sort of reputation and public repute. I don't see the difference there. Thank you, Your Honor, and I would direct the court to Milligan Jackson and new burial cases cited in the briefing and what those cases, identify is that when courts apply the quantity or quality of labor tests, they distinguish between between earnings tied to the taxpayers labor, which comes straight out of 1402 a. It has to be an activity engaged in by the taxpayer, they distinguish between that in actions and activities of others. And so in this case, we have extremely limited evidence that Miss slaughter engaged in any activity to promote and brand herself that what I would encourage your honors to do is to look at the grossing or case, which establishes that the only basis to find a taxpayer is in a trade or business is if there's evidence of continuous and regular activity and Miss slaughter was prejudiced at trial, because she had no need she thought, based on IRS is concessions to argue that she wasn't also in the trade or business of promotion, or wasn't also in the trade or business of branding. Maybe there's an analyst. Let me, let me ask you a question if I could because your time is up but I'm going to take you beyond the time so let me follow up with a hypothetical that is a little closer to this case so let's assume that the publisher had formally segmented the payment for the research and writing of a book, along with trips by Miss slaughter to bookstores throughout the country and the world to do book signings would the income derived from what the publishers paid for her to go to book signings to sign and autograph books that she wrote. Would that be money that she had to pay self employment tax on. If it were part of her trade or business activity and the evidence showed that she actually did that continuously and regularly. I'm telling you, I'm telling you that that's what she did. So, yes, within. If she were engaging if you were actually following through and doing that then yes, no, the hypothetical is of course she was doing that she, the publisher says, I am going to pay you a million dollars a year to research and write one book a year. I am also going to pay you a million dollars. Once you publish that once we publish that book for you to go to X number of book signings and autograph sessions at bookstores throughout the country in the world. Appear in person and sign and autograph your books. Does that 1 million require payment of self employment tax. Under that fact pattern which is different than what we have here, the answer would be yes. And why is that different than here that's promotion for the book. Because in your honor's fact pattern she's actually doing the promotion and there's evidence that your honor is hypothesizing exists. It shows she's continuously and regularly doing that. Continually and regularly promoting and other ways. Now, it's not just all book signing but she's doing that continuously and regularly. If not, the publisher wouldn't be paying her for it. That's not true, your honor, the publisher has a sophisticated marketing operation with its own team and an individual who is assigned to Miss slaughter to curate develop a strategy to market her. That's that individual's labor for which if that individual were an independent contractor, that individual will be subject to self employment tax. This is not an income tax analysis it's only whether or not this slaughters physical labor produced the earnings and here that the tie is too tenuous. If the court were to engage in a but for analysis, then perhaps the answer would be yes there is a connection, but Miss slaughters physical labor and take to judge brushes question earlier, to the extent that Miss slaughter wrote great books in 1999, that became bestsellers because publishers turned her into a brand author and marketed her. She was already taxed under the self employment tax provision on her prior writing, and the rule under Milligan Jackson and Newberry is not that you continue to be taxed forever more on any activity that somehow relates back to the original labor that you perform Bill again holds that very clearly with an insurance agent who sold policies retired. And then the question was, if he continued to receive commissions after his retirement, based on his book of business from pre retirement, was it still tied to his labor pre retirement. That's not the same, that's not the same Mr. Bouchard, because in this case, Miss slaughter is required to engage in physical activity for the promotion. You just said she traveled to New York City to meet with the publisher and her team and the like. Those are not just royalties being paid for past work. But those activities your honor are slight and less than a substantial portion of her intangible assets payments, which the only record evidence is or for her name and likeness. Miss Nina top lead testify that approximately 75% of what publishers pay brand authors is for their name and likeness and your honors can look at this slaughters writing was excellent in 1999, but she didn't make hardly any money for it because she was And now she commands substantial royalties, because of the work of the publishers on her behalf, let me let me ask you a question because I, this is something I was confused about and I think I may be understanding your argument better now but so why does it matter. So you said this several times, the publishers are doing work. There's a team that does this for the publishers. Why does it matter if she's also doing stuff to write what I mean that doesn't seem I guess I don't understand how that's responsive if she is also part of her work is supporting herself going out there marketing advertising, you know, running around doing book signings, why does it matter that there's also another team that does that, and maybe is even more responsible for that. Why does that matter. The reason why your honor is 26 United States Code 14 out to it, which says that a taxpayer owes self employment tax on earnings derived from the taxpayers labor, not the labor of third parties, not circumstances outside of their control and that's why Milligan is helpful and persuasive here, because the publishers labor and activity is what created the brand that Miss slaughter now benefits from writing is the same quality as it was in 1999 and there's no record of it. See that's, that's very odd I mean you may be right about that I guess that just seems odd to me because the pub you're suggesting that the publisher is paying her money for something that the publisher has done, which just seems like a very odd economic transaction. Well, but it's not because Miss slaughter has a personal right to her name and likeness, and in order to get consideration that is valuable in exchange for her name and likeness being put on the sides of city buses and billboards and losing her anonymity and privacy essentially. She is entitled to substantial consideration which is what she received. We're not arguing that she doesn't write great books. We, she's obviously a guest you would probably fire you if you were arguing that I wouldn't, I wouldn't suspect I agree. I agree. What the point is, is that as this topic testify, just as john Grisham and George RR Martin and the other brand name authors out there also write quality books. It's their name that distinguishes them from David Bouchard, who if I wrote the same book, it wouldn't go anywhere. And it's the publishers labor that produces that difference which is, let me ask you, Mr. argument at all that not just the publisher was promoting her books, not just she was personally going to signings and such, but that her agent, her agent was continuously working to promote her books. How does that fact into your analysis. Thank you, your honor that doesn't change it because the IRS never made that argument below. And so it's not before this court. It was an argument that if the IRS had made, then Miss slaughter would have introduced evidence in response to it. But there's another problem with that argument and that is again back to judge brashers question about why does the publishers labor, not apply it to self employment tax for her own labor. Your honors, if there's no further questions I'll reserve my remaining time for rebuttal, you've saved all of your time for rebuttal Mr Bouchard we took you over so you've got all that time left. Thank you. Hey, Miss Wong. You're muted Miss Wong. I'm sorry. Good morning again. Could you speak louder. Yes, yes, I will do my best, or raise the volume on your computer that might work a little too. Okay. The goal of Miss lovers business is to sell books, all have publishing income is derived from that one unitary business, which the tax court found included writing branding that she negotiated for and agreed to in her contract. For her. And we actually did not stipulate what can hear you very well can you all hear her. Very lightly. Okay, I'll put up I'll put up let me see I'm going to put up my volume and see if that helps with yours. Sometimes it helps unfortunately sometimes it helps if you put your face really close to the microphone. Okay. Okay. Is this any better your honor. I'm sorry. Yes. Yes. Great. Thank you. Which the tax court found found as a matter of fact, included, not just the physical writing of the book, but the branding and a promotion, as well as the classes that she agreed to as part of her contract. And we absolutely did not stipulate to Miss lovers conception of her writing business. This was an argument that the tax court also rejected in the motion for reconsideration and which is reviewed for the abuse of discretion. Therefore, all her publishing income is subject to self employment. Now Miss wall, let me ask you a procedural question and it may or may not affect the result in this case but according to Miss slaughters brief, and I haven't read the tax court trial record yet so that's why I'm asking you this question. Miss slaughter says that the IRS did not present any evidence whatsoever at the trial before the tax court is that correct. About promotion. No about anything any affirmative evidence. Oh, well, that is not true because we in the in our pre trial memo we reserve the right to call any of this lovers. Miss lovers witnesses, and we did question her witnesses on direct so yes we did present evidence. We just didn't meet you, you, you cross examine them when she when they were called by Miss slaughter or you call them yourself in your case. Okay. Yeah. Okay, we'll check. Thank you. Okay, thank you. The whole dispute is about Miss slaughters. The scope of Miss lovers business didn't include just the physical writing of the books, or is it include the branding and the contractual clauses. She been both parties knew this her trial counsel said that in his opening statement that Miss law the rights books, she doesn't sell them she doesn't publish them she doesn't advertise them. And that's against the IRS saying in our pre trial memo well that conception of the writing business is dubiously narrow. That is the dispute, and the IRS counsel also said in his opening statement that they did not understand how these purported non writing rights can be described as non writing. So, and the father. Quite a bit of evidence. But it would have ever putting on evidence showing that while trying to show at least that she did not market she did not sell all she did was to write the book. Simply. So what do you say about what do you say about Mr Bouchard response to my question about this was really the standard it was like there was some dispute about the but for versus derived from and that was really what the whole thing was about. According to my argument below, we did not argue for a language which is when you think about it, it's really a matter of argument is that and that was rather incomplete. Or, like, afraid. Do you do you think that the analysis in this case governs the analysis and every other self employment scenario where promotion and branding are involved. Think of a think of an athlete who in signing for, you know, a sneaker or tennis shoe contract also assigns his or her likeness. So that, you know, the Nike or Adidas or Puma can market and brand the product. With the person's name image and and likeness. Is this a one a one a test that governs all of those relationships or is it industry dependent is writing different than playing basketball and selling sneakers. How does that work. It's fact dependent in your hypothetical your honor. It's quite different. Those athletes will be selling somebody else's products will be using their name and likeness someone else's product. And it's essentially It's essentially an endorsement slash advertising. And, and, and the scenario that you described would be the golfer cases that the parties discussed in this case Garcia and goose. Which is unlike Miss fathers case where she is writing her books. She's selling. That is the whole point of purpose. So if she had. So if she had given her likeness to like a video game or something, some kind of like detective video game that you wouldn't be making the same argument. She would have a better argument that she's helping a third party. So video games. Now, if I may extend your metaphor, your hypothetical If the if it's derived from her books. It's a video game that stays on her books, then the factual scenario would also be, you know, a little mark here. But here we have a very simple case. It's very easy. To say that she wrote the book. She promoted the book and there's absolutely evidence here. For her promotion. It's worth as a judge Jordan observe how she took the deductions line item deductions for promotion and rent in New York City, etc. It's also in her petition. Paragraph six Q and 12 and and go where she described a very clearly that at the years that issues on the apartment New York City apartment. As far as the agents work, there's, there are actually two circuit cases circuit and century states from the Senate circuit that we both know we cited. We absolutely cannot waive that argument because we absolutely can't leave it. We can make any argument supported by the record. And I also want to mention two cases that are binding on the court from the open circuit and happens. And it says that A trade of business. Over a number of years, which is As a brand author for any That you only need to put in as much work as you need for that particular trade of business. And again, this mother has put in enough work to make her Step back from that. Again, it's really almost doesn't matter whether she promoted or not. Because it's one single It's like saying, well, a lawyer and 80% of their time writing their brief and 20% of their time on or argument. Versus a lawyer who spent all their time writing a brief and then 15 minutes at the podium and that's all the time to spend on your argument. It doesn't matter. It doesn't mean to have a brief writing business or One lawyer in business with one In this case, her goal is For advance get paid as much because Because she sells books really well. Her brand is big into the price that her publishers are willing to pay for Which is And that's not Miss Lauderdale Miss Lauderdale was paid for what she was working So that doesn't quite apply. I'm also emphasize this phrase physical labor. That is not in The reg or The word is activity and in the reg is service or other And just one very quick word on allocation issues. There is no allocation necessary because it is one single business. And Mr. Lauderdale methodology is There are no objective To review for the reasonableness of her conclusion methodology. So in conclusion, Miss Lauderdale had one business writing, which included promoting her writing and all the terms that she bargained for and agreed to in her publishing contract. We have always maintained acquisition and we did not stipulate Therefore, all her publishing income was derived from her work as a writer, which is all subject to self-employment tax. Unless the court has further questions, we will ask the court to refer. Thank you. Thank you very much, Miss Wong. Mr. Bouchard. Yes, Your Honors. I wanted to touch on two points. First, in regards to whether or not the binding formal concession, the IRS made were ambiguous as judge As Judge, you asked previously. I want, I want to know that if there were any ambiguity, Miss Slaughter's interpretation and opinion as to the meaning of that Concession is reasonable and because the IRS drafted in its post-trial briefs and said in its opening statement repeatedly the same thing without caveat or qualification. To the extent there is any ambiguity, it should be construed against the IRS because Miss Slaughter's interpretation is a reasonable one. Mr. Bouchard, let me ask you a question about the stipulation because I think it's a big part of your case. It's one thing to say that the IRS is stuck with the stipulation as a factual matter, but why are we or the tax court as judicial bodies bound by the legal effect or the legal scope of that factual stipulation? Because it's a fact agreement, Your Honor. It is binding and the tax court didn't have discretion to discard it or disregard it. They had to enforce it. But the question is what it means. Well, if that's the question. You think it means the case. I mean, with that stipulation, you should have won the case with no other evidence presented, right? No, because the IRS could have tried to ask Miss Slaughter, tell us about how often and how regularly and how frequently you engaged in promotional activity. Tell us about how often and how regularly and how frequently you engaged in branding activity to try to prove their burden under Brodsinger of continuous and regular activity. They could have introduced that evidence. So the stipulation is not the end-all be-all then? Well, the reason why is because if they had done that, Your Honor, then they presumably would have said in their post-trial briefs, based on the evidence at trial, we stand corrected. She's not just in the trade or business of writing. She's also in the trade or business of branding and promotion as the trial evidence shows. I think that's a very, very fine way to try to figure out what that stipulation means. I mean, people stipulate the facts all the time in litigation, but the breadth of that stipulation, the legal effect of that stipulation is not for the parties to decide, generally speaking. Your Honor, I would direct the court to one case, Crivera, from this circuit, which asked whether the party's binding concession was well-considered. And I would also direct this court to Lancao, a case that's not cited in the briefs from the 11th Circuit, 353 Federal Appendix 244, which says, quote, before agreeing to a stipulation, a litigant has a duty to satisfy himself concerning the matters which his opponent proposes for stipulation. The IRS had a duty to consider the matters. It had two senior attorneys on this case. Both wrote and signed their names without caveat or qualification that Miss Slaughter's only trade or business was writing. But the last point that I wanted to make, if Your Honors would permit me to go a bit over. Go ahead. You've got a minute. Was that the only record evidence is that Miss Slaughter engaged in sporadic and occasional branding and promotion activity. As a matter of law, sporadic activity does not make trade or business activity. Groszinger does not define trade or business. The Supreme Court case Groszinger does not define trade or business as the dictionary definition of the terms. The Sixth Circuit in 2018 and pension funds interpreted Groszinger and said, just like Groszinger says, trade or business has a narrow meaning specific to tax law. Based on the deficient record evidence, there was no legal basis for the tax court to conclude that Miss Slaughter was in the trade or business of branding and promotion. At most, the record showed she sporadically engaged in those activities. Therefore, this court should reverse and rely on the unrebutted expert testimony that only a fraction of Miss Slaughter's earnings were tied to the quality and quantity of her labor of writing. Thank you. Richard, thank you very much, Miss Wong.